UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
\_\_\_\_\_

JOEL MARCEL CARTER,

        Plaintiff,                Case No. 1:21-cv-331

v.                                       Hon. Hala Y. Jarbou

HEIDI WASHINGTON, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss for failure to state a claim Plaintiff's Fourteenth Amendment claims against the named Defendants.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington, MDOC Medical Director Carmen McIntyre, Warden John Davids, Deputy Warden Lynn Sanborn, and C. Gilford.

Plaintiff alleges that he has been classified as having a high risk of heat related injury because of his disabilities. Plaintiff states that in April of 2018, Defendant Washington ordered ICF officials to seal every cell window for security reasons, without regard for medically vulnerable prisoners who suffer from heat related illnesses. Plaintiff claims that Defendants Washington, Davids, Sandborn, and Gilford have knowledge of ventilation problems, but maintain an unlawful policy of confiscating portable fans.

Plaintiff asserts that the action of sealing the cell windows has stopped the flow of fresh air and increased the occurrence of heat related illnesses. Because of the sealed windows, the fans in the hallway have no impact on the temperature in the cells, which can reach over 100 degrees.

Plaintiff states that he suffers from multiple sclerosis, hypertension, and severe obesity. Plaintiff also suffers from psychosis, depression, and anxiety, and takes Risperdal and Prozac. Plaintiff states that both of these medications are known to impair the body's ability to regulate heat when temperatures rise above a heat index of 90 degrees.

On June 10, 2020, Defendant Sandborn issued a heat reduction plan during a heat alert, which stated that all prisoner food slots would be opened during a heat alert upon a prisoner's request, except for the 10:00 p.m. to 6:00 a.m. shift. Plaintiff states that this procedure had no effect on the heat index in the cells, although it did increase ventilation. Plaintiff claims that unfortunately, some officers refused to open the slots for personal reasons and were allowed to close the slots for any reason in their discretion. Plaintiff also states that requiring the food slots

to be closed on the 10:00 p.m. to 6:00 a.m. shift does not make sense because that is often when the cells are the hottest since they have retained heat from the day.

On July 5, 2020, the temperature in Plaintiff's cell exceeded 94 degrees, causing him to suffer from difficulty breathing, panic attacks, hyperventilation, dizziness, headaches, and nausea, and exposed Plaintiff to an unnecessary risk of severe injury and death. Plaintiff continued to suffer under similar conditions throughout the summer months.

Plaintiff alleges that Defendant McIntyre has an unlawful practice of denying accommodations, such as a fan, to heat sensitive prisoners. Plaintiff states that MDOC Policy Directive 04.07.112A prohibits level 5 prisoners from possessing a portable fan, with no exceptions for prisoners who suffer from heat related complications. However, prisoners in levels 1, 2, and 4 are allowed to possess one portable fan, and if they have a documented heat illness and are indigent, they may be provided with a fan at no cost to them.

When Plaintiff was transferred to level 5, Defendants confiscated his fan and labeled it contraband. Plaintiff states that level 5 prisoners may possess appliances such as a television, typewriter, radio, media player, headphones, and one surge protector, none of which are medically necessary, so it makes no sense to prohibit prisoners like Plaintiff from possessing a fan. Plaintiff also contends that despite the policy prohibiting fans in level 5, at least one other level 5 prisoner has been allowed to possess a fan. Plaintiff states that the reality is that prison staff selectively enforce the practice of confiscating fans when they want to punish a prisoner for violating the rules, rather than enforcing the policy across the board.

On June 22, 2020, Plaintiff submitted an "Offender ADA Reasonable Accommodation Request" to Defendant Gilford seeking a state issue portable fan for heat related illness. Defendant Gilford refused to process Plaintiff's request. On August 5, 2020, Plaintiff sent

Defendant Gilford an ADA appeal, but Defendant Gilford refused to process the appeal. Plaintiff also filed a grievance on Defendant Gilford, which was rejected as non-grievable. Plaintiff complains that he should be allowed to grieve Defendant Gilford's refusal to process his request as a violation of MDOC policy. Plaintiff also asserts that he should be able to file an appeal directly with the Equal Employment Opportunity Administrator, rather than being required to first appeal to the ADA Coordinator.

Plaintiff claims that Defendants violated his rights under Title II of the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and the Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

4

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.   ADA and RA

As noted above, Plaintiff asserts that Defendants violated his rights under Title II of the ADA, 42 U.S.C. §§ 12131–12165, which applies to public entities, as well as under the Rehabilitation Act.[1] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any

---

[1]Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*, 62 F.3d 843, 846, n. 2 (6th Cir. 1995)).

5

such entity." 42 U.S.C. § 12132. Discrimination against a "qualified individual on the basis of a disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case under the ADA for failure to accommodate a disability, the plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the service, with or without reasonable accommodation; (3) the defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendants failed to provide the necessary accommodation. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018).

Plaintiff's alleged diagnoses include multiple sclerosis, hypertension, and severe obesity. Plaintiff also suffers from psychosis, depression, and anxiety, and takes Risperdal and Prozac, and that these medications are known to impair the body's ability to regulate heat when temperatures rise above a heat index of 90 degrees. Assuming that Plaintiff's conditions fall within the definition of "disability," Plaintiff has alleged facts that suggest that he was deprived of an accommodation, a fan, that would allow him to be housed in a manner that did not threaten his health. Because Plaintiff has alleged that a fan was a necessary accommodation for his disability, his ADA and RA may not be dismissed on initial review. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008).

**IV.    Eighth Amendment**

Plaintiff alleges that the decision to seal the cell windows at ICF and to deny Level 5 prisoners a portable fan during the summer months violated his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those

convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

7

Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In extreme circumstances, courts have found that inadequate ventilation may result in a sufficiently serious risk to prisoner safety under the Eighth Amendment. *See, e.g., White v. Monohan*, 326 F. App'x 385 (7th Cir. 2009) (reversing district court dismissal of claim alleging that inadequate ventilation permitted temperatures to reach 110 degrees during the summer months); *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004) (finding that the Eighth Amendment was violated by a ventilation system that allowed summer temperatures to average in the 90s, unless prison officials took measures to ameliorate the heat by providing fans, ice water and daily showers); *Keenan v. Hall*, 83 F.3d 1083 (9th Cir.1996) (allowing a prisoner's claim that his cell was "[s]aturated with the [f]umes of [f]eces (thrown by some inmates), the smell of urine and vomit as well as other stale body odors" to proceed). However, absent such extreme conditions raising serious risks to prisoner health, courts routinely have determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim. *See, e.g., Vasquez v. Frank*, 290 F. App'x 927 (7th Cir. 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) (citing cases and concluding that a ventilation system that allowed summer temperatures to average eighty-five

8

or eighty-six degrees during the day and eighty degrees at night was not sufficiently extreme to violate the Eighth Amendment, where such temperatures were expected and tolerated by the general public in Florida); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (upholding the dismissal of a prisoner's claim that the confiscation of his extension cord, which was needed to operate a fan, deprived him of constitutionally adequate ventilation), *overruled on other grounds by Maben v. Thelen,* 887 F.3d 252 (6th Cir. 2018); *Bourrage v. McFarland*, No. 99-60923, 2001 WL 185034 (5th Cir. Feb. 6, 2001) (upholding dismissal of a prisoner's claim that inadequate ventilation had led to his prescription for an Albuterol Inhaler); *Jasman v. Schmidt*, 4 F. App'x 233, 235-36 (6th Cir. 2001) (affirming dismissal of a claim that the weatherstripping on the doors of the cells at a Michigan prison prevented air circulation and resulted in inadequate ventilation); *Davis v. Crowley*, No. 00-1475, 2000 WL 1871891 (6th Cir. Dec. 12, 2000) (concluding that a plaintiff's allegations that a ventilation system smelled strongly of gas did not allege a sufficiently serious harm where, despite his allegations that the fumes caused him to experience shortness of breath and watery eyes, the plaintiff failed to allege a substantial risk of serious harm); *Thompson v. Cty. of Medina*, 29 F.3d 238 (6th Cir.1994) (upholding a dismissal of pretrial detainees' claim that a jail had inadequate ventilation); *King v. Berghuis*, No.1:10-cv-57, 2010 WL 565373, at *3 (W.D. Mich. Feb. 13, 2010) (dismissing prisoners' claim alleging that ventilation system moves less than 10 cubic feet of air and caused headaches).

In this case, Plaintiff claims that as a result of prison policy, for which Defendant Washington is responsible, as well as the decisions of Defendants McIntyre, Davids, and Sandborn to deny Plaintiff a medical accommodation for a fan, he suffered temperatures exceeding 94 degrees on July 5, 2020, as well as similarly hot conditions throughout the summer months. Plaintiff states that, as a result, he suffered from difficulty breathing, panic attacks,

9

hyperventilation, dizziness, headaches, and nausea. On initial review, the Court concludes that Plaintiff's allegations are sufficient to state a claim under the Eighth Amendment.

## V.   Fourteenth Amendment

Plaintiff makes a conclusory contention that Defendants violated his rights under the Fourteenth Amendment. The Court assumes that Plaintiff is attempting to assert a violation of his substantive due process rights under the Fourteenth Amendment,[2] which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941,

---

[2] Alternatively, Plaintiff may refer to the Fourteenth Amendment solely for its incorporation of the relevant protections under the First Amendment, *see Edwards v. South Carolina*, 372 U.S. 229, 237–38 (1963), and Eighth Amendment, *see Robinson v. California*, 370 U.S. 660, 667 (1962), as applied to the States. In that event, no further discussion of the Fourteenth Amendment claim is required.

10

*4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there is a specific constitutional amendment that applies to Plaintiff's claims. Specifically, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his claim that he was exposed to extremely high temperatures in his cell. *See Graham*, 490 U.S. at 394 *(*citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Consequently, Plaintiff's substantive due process claim will be dismissed.

## VI.  Pending motions

Plaintiff has filed a motion for immediate consideration (ECF No. 4), and motions for a temporary restraining order and preliminary injunction and to show cause why a preliminary

11

injunction should not issue (ECF Nos. 5 and 6). Because the Court has considered Plaintiff's complaint and motions, his motion for immediate consideration will be denied as moot.

In Plaintiff's motion for temporary restraining order and preliminary injunction, he merely asserts that for the reasons stated in the complaint, he is entitled to immediate injunctive relief. Plaintiff seeks an order enjoining Defendants from subjecting him to conditions such as those described in the complaint in the future.

Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324,

326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943–44 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his claims. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional or statutory rights.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578; *see also D.T. et al. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (holding that, absent a showing of irreparable harm, a preliminary injunction

is not appropriate, regardless of the strength of the other factors). In Plaintiff's complaint, he specifically mentions the temperature in July of 2020, and throughout that summer. Plaintiff does not allege any facts related to current conditions in the prison. Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286–87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief and his motion to show cause will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Fourteenth Amendment claims against the named Defendants will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's ADA, RA, and Eighth Amendment claims against Defendants Washington, McIntyre, Davids, Sanborn, and Gilford remain in the case.

An order consistent with this opinion will be entered.

Dated: August 12, 2021  /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE